(May 9, 1899.)

## STOOKEY v. BOARD OF COUNTY COMMISSIONERS OF NEZ PERCES COUNTY.

[57 Pac. 312.]

CONSTITUTIONAL LAW—SALARIES—COUNTY OFFICERS—PUBLIC POLICY. The legislature has authority to provide by statute the maximum and minimum salary of county officers, and may vest in the boards of county commissioners the discretionary authority of determining the amount of salary of county officers within the limit of such maximum and minimum salary, except the salary of such county commissioners. Public policy forbids that any officer be empowered to fix his own compensation.

(Syllabus by the court.)

An original proceeding supreme court.

C. J. Orland and James W. Reid, for Plaintiff.

Section 7 of article 18 of the constitution provides that the salaries of county officers shall be "a fixed annual salary." The legislature might perhaps have been nearer the constitutional requirement had it provided that the salaries be fixed annually. It would then have had an annually fixed salary, which it now has not. Instead of having a fixed salary, by this act we have a fluctuating salary, according to the whim, extravagance, parsimony or political prejudice which may control the minds and acts of men, and more especially is this true if the present board of commissioners can fix the salaries of the present officers. By section 1 of article 3 of the constitution the legislative power of the state is vested in a

Senate and House of Representatives, and by section 5 of article 18 it is provided that "The legislature shall establish . . . . a system of county governments." By the provisions of section 1 of article 3, all legislative power is vested in the bodies provided for, and by section 5 of article 18, this body is expressly charged with certain duties as to counties. These sections do not provide, nor by any implication can they be construed as authorizing the legislature to delegate or shift the burden of legislation to the several counties of the state, as to their system of government or any part of it, which this act directly attempts to do. It delegates to the board of county commissioners of the several counties to legislate or enact a law as to the compensation which shall be paid themselves for the next two years, and all other of the county officers now in office, and also for the county officers to be elected for the next two years, and every two years thereafter the boards resolve themselves into a legislature and proceed to enact salary laws for their successors. By the clearest implication the legislature would be prohibited from conferring authority upon such boards to fix the salaries of other county officers. (*Page v. Allen,* 58 Pa. St. 338, 98 Am. Dec. 272.) The usual and elementary construction of constitutions require uniformity, and ours is no exception to the rule. The expression is repeatedly used, and by necessary implication must be so. (*Miller v. Kister,* 68 Cal. 142, 8 Pac. 813; *Smith v. Judge,* 17 Cal. 554.) Local and special laws are expressly prohibited by the constitution with reference to officers' salaries during their term of office. (Section 19 of article 3, last paragraph of constitution; *Smith v. McDermott,* 93 Cal. 421, 29 Pac. 34; *People v. Central Pacific Ry.,* 83 Cal. 393, 23 Pac. 303; Am. & Eng. Ency. of Law, 1st ed., 695.) This is an attempt at clear delegation of legislative authority by the legislature to twenty-one boards of county commissioners or twenty-one legislative bodies, who, if their act is valid, are authorized to exercise important functions. We claim that such power cannot be delegated. (*State v. Simons,* 32 Minn. 540, 21 N. W. 750; *Commonwealth v. Addams,* 95 Ky. 588, 26 S. W. 581; *Dowling v. Lancashire Ins. Co.,* 92 Wis. 63,

65 N. W. 738; *State v. Young*, 29 Minn. 474, 9 N. W. 754; *Ex parte Wall*, 48 Cal. 315, 17 Am. Rep. 425; *Field v. Clark*, 143 U. S. 649, 12 Sup. Ct. Rep. 495; *Dougherty v. Austin*, 94 Cal. 601, 28 Pac. 834, 29 Pac. 1092.) This act by reason of its operation is special, as it is to be applied to each of the counties of the state, at the arbitrary discretion of the boards of county commissioners of each county, and will act upon each county in an independent manner without any regard to uniformity or classification, and its effect in each county is to that county alone. (*City of Topeka v. Gillett*, 32 Kan. 431, 4 Pac. 800.) The salaries of the officers of counties is a part of the county government. (*Longan v. County of Solano*, 65 Cal. 123, 3 Pac. 463.) Under the provisions of section 5 of article 18, the constitution must be uniform throughout the state, and which has been conclusively demonstrated by the actions of the various boards, in the fixing of the salaries, has not been obtained, and of necessity cannot be, and is therefore in violation of this section of the constitution. (*State v. Boyd*, 19 Nev. 43, 5 Pac. 735; *Dougherty v. Austin*, 94 Cal. 603, 28 Pac. 834, 29 Pac. 1092; *Miller v. Kister*, 68 Cal. 142, 8 Pac. 813; *Smith v. Judge*, 17 Cal. 554.)

S. H. Hays, Attorney General, for Defendants.

It is true that few laws of exactly this kind have been before the courts for adjudication, but this argument is the same which is usually most strenuously advanced against laws which classify counties, either by population or taxable property, it being contended in those cases that the legislature, knowing the population or taxable property of each county and fixing the classification on that basis, might as well have named each county specifically. The argument is as valid against the classification system as against the one in question. The classification system has, however, been held to be clearly constitutional. (*Harwood v. Wentworth*, 162 U. S. 547, 16 Sup. Ct. Rep. 890; *Seabolt v. Commissioners*, 187 Pa. St. 318, 41 Atl. 22.) Special laws are those made for individual cases, or for less than a class requiring laws appropriate to its peculiar condition and circumstances; local laws are special as to

place. (Sutherland on Statutory Construction, sec. 127; *Tulare Co. v. May,* 118 Cal. 303, 50 Pac. 427; *Stone v. Wilson,* 19 Ky. Law Rep. 126, 39 S. W. 49; *People v. Onahan,* 170 Ill. 449, 48 N. E. 1003; *Fleckenstein v. Placer Co.* (Cal.), 37 Pac. 931; *Johnson v. Mocabee,* 1 Okla. 204, 32 Pac. 336; *McInerney v. City of Denver,* 17 Colo. 302, 29 Pac. 516; *People v. Dunn,* 157 N. Y. 528, 52 N. E. 572.) It has been the policy of our laws for many years to empower county boards to fix the salaries of county officers. (*Ryan v. Outagamie County,* 80 Wis. 336, 50 N. W. 340; *Staples v. Llano County,* 9 Tex. Civ. App. 203, 28, S. W. 569; *Stanfield v. State,* 83 Tex. 317, 18 S. W. 577; *Stone v. Wilson,* 19 Ky. Law Rep. 126, 39 S. W. 49.) In a constitutional sense, however, these duties cannot be said to be legislative, executive or judicial, but, as modern law-writers term them, they are purely administrative. Administrative duties of this kind are frequently imposed upon boards. (*Board of Commissioners v. Smith,* 22 Colo. 534, 45 Pac. 357; *Board of Directors v. Collins,* 46 Neb. 411, 64 N. W. 1086; *Nelson v. Troy,* 11 Wash. 435, 39 Pac. 974; *Board of Law Library Trustees v. Board of Supervisors,* 99 Cal. 571, 34 Pac. 244; 8 Am. & Eng. Ency. of Law, 911; *People v. Kipley,* 171 Ill. 44, 49 N. E. 229; 6 Am. & Eng. of Law, 2d ed.,1029; *Miller v. State,* 149 Ind. 607, 49 N. E. 894.) The fact that an aternative is open to the commissioners in administering the law is no proof of lack of uniformity. (*Hellman v. Shoulters,* 114 Cal. 136 (146), 44 Pac. 915, 45 Pac. 1057.)

QUARLES, J.—This is an original proceeding, commenced by the plaintiff, who is clerk of the district court and *ex-officio* auditor and recorder in and for Nez Perces county, to obtain a writ of prohibition prohibiting the defendants, as commissioners of said county, from fixing the salary of the plaintiff as said officer for the years 1899 and 1900. The contention upon which this proceeding is based is that the act of March 7, 1899, known as the "County Salary Bill," is in contravention of the constitution and void. By joint resolution submitted to the electors of the state by the legislature at its fourth session, 1897, and adopted at the general election in November, 1898,

section 7, article 18, of the constitution was amended so as to read as follows: "Sec. 7. All county officers, and deputies when allowed, shall receive, as full compensation for their services, fixed annual salaries, to be paid quarterly out of the county treasury, as other expenses are paid. All actual and necessary expenses, incurred by any county officer or deputy in the performance of his official duties, shall be a legal charge against the county, and may be retained by him out of any fees which may come into his hands. All fees, which may come into his hands from whatever source, over and above his actual and necessary expenses, shall be turned into the county treasury at the end of each quarter. He shall, at the end of each quarter, file with the clerk of the board of county commissioners a sworn statement, accompanied by proper vouchers, showing all expenses incurred and all fees received, which must be audited by the board, as other accounts." The act of March 7, 1899, was enacted for the purpose of carrying into effect the above provision of the constitution. Said act fixes the maximum and minimum compensation to be received by the different county officers, leaving the exact amount of the salary of each county officer to be fixed by the board of county commissioners in the respective counties. Plaintiff contends that the act is local and special. This contention is not well founded, as the act is general in its nature and terms, and applies equally to every county in the state.

The second point urged by the plaintiff is that the "said act is an attempt to grant legislative power to the board of county commissioners, and is a delegation of legislative functions." This point raises the serious question in this case. If the legislature is prohibited from vesting in the county commissioners the discretionary power of fixing the compensation of county officers within certain prescribed limits, it is by the provisions of our constitution, and not otherwise. The vesting of such discretionary power in the board of county commissioners, except with reference to their own salaries, is not forbidden by, or contrary to, public policy. Is it forbidden by any provision of the constitution? We think not. We find nothing in our

constitution prohibiting it. The people have, in the constitution, granted this discretionary power to the boards of county commissioners with reference to one of the county officers, viz., county attorney thus shaping public policy with reference to the question under consideration. The principle of vesting this discretionary power in the boards of county commissioners being indorsed by the people in the constitution, there being nothing in the constitution prohibiting the act in question, and the people having declared by the said constitutional provision that county officers should be paid by salaries, and not by fees, we feel it our duty to hold the act in question valid. except that part of it relating to the salaries of county commissioners. While the wisdom of the act in question may well be doubted, and while we think that an act classifying the counties of the state, and absolutely fixing the salaries of the different county officers in each class of counties, would be better, yet the question before us is not. which would be the better way of doing it. That question is to be decided by the legislature. We appreciate the difficulties experienced by the legislature in providing for compensation of the different officers in the various counties. Novel conditions exist in this state. We have a large area. Some of the counties are large in area, while others are small. Some are sparsely settled, while others are populous. Some have easy shipping facilities, while others are isolated and distant from railroads, making traffic expensive. Owing to this diversity of conditions, the cost of living in one county is much more than in others It would not be fair or equitable to require an officer in a county where it is costly to live to work for the same salary paid the same officer performing the same amount of work in a county where it would cost only half as much to live. Taking into consideration these diverse conditions, the legislature considered that the amount of salaries ought to be determined in the various counties with reference to the amount of work to be performed and the cost of living. It would not be fair or just to the officers or to the taxpayers for the county officers of Ada, Latah, and Shoshone counties to be paid the same salaries as those paid to the county officers

of Custer, Lincoln, and Bear Lake counties. To provide a uniform system which would be just to the office holder and to the taxpayer, the act in question was passed. The legislature could not well make the salaries of the different county offices uniform throughout the state, for to do so would be an act of injustice to some of the officeholders and to some of the taxpayers. Considering all of the existing conditions, the legislature thought it best to fix the maximum and minimum compensation of the various county officers, and leave a certain discretion to the county commissioners. It is our pleasure to sustain the act in question, with one exception. There is nothing in our constitution, which, directly or indirectly sanctions the principle of a county officer fixing his own salary. On the other hand, the trend of our laws, both fundamental and statutory, and public policy, forbid the principle. We do not think that the legislature has authority to vest even a discretionary power in any officer to fix his own salary. Common honesty, public morals, and the protection of the individual citizen demands, *pro bono publico,* that such a practice should not be tolerated. It is a well-defined public policy in this state that no person acting in an official capacity shall fix the price of materials furnished the public, or fix the compensation for services rendered or to be rendered by him for the public. The law wisely protects a public officer from the temptation of being too generous in the matter of fixing his own compensation. Our conclusion is that the act in question is valid, except that part thereof which attempts to authorize county commissioners to determine what amount of salary between $150 and $1,000 per annum they shall receive. Inasmuch as boards of county commissioners in the various counties of the state have already, by order, designated the salaries to be received by all county officers, we deem it best to suggest that the orders made by the boards of county commissioners, so far as their own compensation is concerned, are void, and that, until further legislation is had, county commissioners will receive the compensation now fixed by statute, viz., "six dollars for each day actually and necessarily engaged in transacting county business, not to exceed five hundred ($500) dollars for any one year," and "all actual and necessary

expenses incurred" by them "in the performance of official duty." The constitutional amendment and act under consideration repeals that part of the act of February 23, 1893, which allows mileage to county commissioners. It is a matter of great regret, if not public calamity, shown by the public history of the state, that in some of the counties the county commissioners, contrary to law and common decency, have made orders allowing themselves and other officers quarterly salary in advance. Such acts were not contemplated either by the constitution or act in question. We deem, it best to suggest that the authority vested by the act in question is not an arbitrary, but discretionary, power, and in any case in which their discretion is abused the party aggrieved may obtain redress by appeal, as in case of other orders made by county commissioners. The writ demanded is denied. Costs awarded to neither party.

Huston, C. J., and Sullivan, J., concur.